UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

MERISSA VULPIS, an individual,

     Plaintiff,

vs.

CREDIT ACCEPTANCE CORPORATION,
a Michigan Corporation,

     Defendant.
_____/

## COMPLAINT

1.    Plaintiff, MERISSA VULPIS (hereinafter referred to as "Plaintiff" and "VULPIS"), was an employee of Defendant, CREDIT ACCEPTANCE CORPORATION (hereinafter "Defendant" or "CAC"), and brings this action against Defendant for violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq.*, Title VII of the Civil Rights Act, 42 U.S.C. §2000 *et seq.*, the Florida Civil Rights Act, F.S. §760.01 *et seq.*, and the Florida Whistleblower Act, F.S. §448.102 *et seq.*

2.    VULPIS is an individual residing in Broward County, Florida, within the jurisdiction of this Court.

3.    CAC, a Michigan Corporation, is an indirect auto finance company with corporate headquarters in Southfield, Michigan that at all times material to this Complaint was engaged in business throughout the United States including in Broward County, Florida, within the jurisdiction of this Court.

4.      Jurisdiction is conferred on this Court by 28 U.S.C. §1337, 29 U.S.C. §2601, 42 U.S.C. §2000, and 28 U.S.C. §1367(a).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, as a substantial part of the events giving rise to this action occurred in Broward County, within the jurisdiction of the United States District Court for the Southern District of Florida.

6.      Between approximately December 2013 and October 2015, VULPIS was employed by CAC as a Market Area Manager.

7.      CAC, at all times material to this Complaint, has been engaged in an industry affecting commerce and has had Fifty (50) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

8.      At all times material to this action, VULPIS was an employee of CAC and CAC was an employer of VULPIS.

9.      VULPIS is an eligible employee within the meaning of the FMLA and worked for Defendant more than 1,250 hours in the twelve (12) months preceding the year 2015.

10.     More specifically, VULPIS, at all times material to this action, was an employee within the meaning of the FMLA, 29 U.S.C. §2611(2), §2612, §2614(a), §2615(a)(1), and §2617(a).

11.     CAC, at all times material to this action, was and continues to be an employer within the meaning of the FMLA, 29 U.S.C. §2611(4), §2612, §2614(a), §2615(a)(1) and §2617(a).

12.     Between approximately December 2013 and October 2015, VULPIS worked as a Market Area Manager for Defendant's Fort Lauderdale, Florida territory and satisfactorily performed her essential job duties for Defendant.

13.     In approximately February 2015, VULPIS notified CAC that she was pregnant and VULPIS applied for maternity and FMLA leave 29 U.S.C. §2601, *et seq.*, to begin in April 2015 and continue through June 2015, which leave request was approved by Defendant in late February 2015.

14.     After VULPIS notified CAC of her need for maternity and FMLA leave, on or around March 2, 2015, Defendant's Director of Sales for the Southeast Region, Jonathan Blair Witter (hereinafter "Witter"), placed VULPIS on a three (3) month "Performance Action Plan" starting March 2015 through May 31, 2015, which Plan purported to establish expectations and goals which included but were not limited to, increased customer enrollments—with monthly averages to be met—and reporting requirements to Witter despite the fact that CAC knew VULPIS would be absent from work on maternity and FMLA leave during the time period during which CAC set requirements VULPIS was supposed to meet.

15.     When Witter informed VULPIS that CAC was placing Plaintiff on a "Performance Action Plan" in March 2015, VULPIS objected to what she reasonably and in good faith believed was disparate treatment and retaliation by CAC and VULPIS communicated to Witter that CAC was establishing unreasonable, disparate performance standards towards Plaintiff.

16.     Following the conclusion of VULPIS' maternity leave in July 2015, Witter again implemented substantially the same "Performance Action Plan" and attempted to hold VULPIS accountable for the Fort Lauderdale territory's performance for the time period VULPIS had been out of work on FMLA leave between April 2015 and June 2015.

17.     In early October 2015, CAC terminated VULPIS' employment for the purported reason that VULPIS' job performance was not meeting expectations despite the fact that the

targets and averages which CAC claimed VULPIS should have met were not possible to achieve while VULPIS was absent from work on maternity and FMLA leave protected by law.

18.     During her employment with CAC, VULPIS exercised her right to take maternity and medical leave from employment beginning April 2015 under the FMLA.

19.     At all times material to this action, VULPIS satisfactorily performed her essential job duties as a Market Area Manager for CAC.

20.     CAC interfered with VULPIS' rights to maternity and medical leave in 2015 under the FMLA and subjected VULPIS to discrimination based on her pregnancy and sex/gender and retaliation because of VULPIS' exercise of her rights to seek and take leave under the FMLA, culminating with Defendant's termination of VULPIS' employment in October 2015 purportedly for unsatisfactory job performance.

21.     The reasons proffered by CAC for VULPIS' termination were false and known to be false by CAC at the time of Plaintiff's termination in October 2015.

22.     All conditions precedent to the institution of the claims in this Complaint have either occurred or been waived.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

23.     On or around December 3, 2015, VULPIS filed a Charge of Discrimination against CAC with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR).  A copy of VULPIS' EEOC Charge, Charge No. 510-2016-01025C, is attached hereto as Exhibit A.

24.     On or around May 16, 2016, the EEOC issued a Notice of Right to Sue to VULPIS.  VULPIS' Notice of Right to Sue was received by the undersigned on or around May 20, 2016.  A copy of VULPIS' Notice of Right to Sue is attached hereto as Exhibit B.

25.     VULPIS has exhausted all administrative remedies.

26.     All conditions precedent to the institution of this action have either occurred or been waived.

## COUNT I
## INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff, MERISSA VULPIS, reasserts and reaffirms the allegations of Paragraphs 1 through 26 and further states that this is an action against CREDIT ACCEPTANCE CORPORATION for violations of the Family and Medical Leave Act, 29 U.S.C. §2601 et seq.

27.     The FMLA, 29 U.S.C. §2615(a)(1), provides that it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under 29 U.S.C. §2611, *et seq*.

28.     Under the FMLA, when the need for leave is foreseeable based on the expected birth of a child, the employee is required to provide the employer notice no less than thirty (30) days prior to the date the leave is to begin or if the date of the birth requires leave to begin less than 30 days, the employee is required to provide notice as is practicable as provided by 29 U.S.C. §§2612(a)(1)(A) and (e).

29.     During her employment with CAC, VULPIS exercised, and/or attempted to exercise, her rights in 2015 under the FMLA in accordance with 29 U.S.C. §§2612(a)(1)(A) and (e).

30.     By exercising and/or attempting to exercise her rights under the FMLA during her employment with CAC in 2015, including but not necessarily limited to VULPIS' right to medical leave under the FMLA, VULPIS engaged in activity protected by the FMLA, 29 U.S.C. §2611 *et seq*., triggering the protections of the FMLA, specifically including but not limited to VULPIS' rights pursuant to:  (a) 29 U.S.C. §2612 to take up to twelve (12) workweeks of leave

because of the "birth of a son … and in order to take care for such son"; and (b) 29 U.S.C. §2614 to be restored to her position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment upon her return from leave.

31.     CAC interfered with VULPIS' right to take medical leave under the FMLA in 2015 when Defendant had knowledge of VULPIS' exercise and/or attempted exercise of her rights under the FMLA, in violation of 29 U.S.C. 2615(a)(1).

32.     As a result of CAC's violations of VULPIS' rights protected by the FMLA, Plaintiff has suffered and continues to suffer damages including but not necessarily limited to unpaid wages and lost employment benefits.

33.     CAC's violations of the FMLA were willful, intentional and not done in good faith.

34.     Pursuant to 29 U.S.C. §2617(a)(1)(iii), VULPIS is entitled to an award of liquidated damages from CAC equal to the sum of the amount of all wages, salary, employment benefits, and other compensation denied to or lost by VULPIS by reason of CAC's violations of 29 U.S.C. §2615(a)(1).

35.     Pursuant to 29 U.S.C. §2617(a)(3), VULPIS is entitled to all reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action to be paid by Defendant.

WHEREFORE, Plaintiff, MERISSA VULPIS, demands judgment against Defendant, CREDIT ACCEPTANCE CORPORATION, for back pay, employment benefits, other compensation including bonuses, liquidated damages, equitable relief including but not limited to front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

## COUNT II
## RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff, MERISSA VULPIS, reasserts and reaffirms the allegations of Paragraphs 1 through 26 and further states that this is an action against CREDIT ACCEPTANCE CORPORATION for violations of the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.*

36.     The FMLA, 29 U.S.C. §2601 *et seq.*, prohibits an employer from retaliating against an eligible employee who has (a) obtained and/or attempted to obtain the benefits and protections of the FMLA; or (b) otherwise triggered the protections of, or engaged in activity protected by, the FMLA.  In addition, 29 U.S.C. §2615 prohibits an employer from discharging or in any other manner discriminating against any individual for opposing any practice made unlawful by the Act.

37.     During her employment with CAC in 2015, VULPIS exercised, and/or attempted to exercise, her rights under the FMLA in accordance with 29 U.S.C. §§2612(a)(1)(A) and (e).

38.     By exercising and/or attempting to exercise her rights to take maternity leave under the FMLA during her employment with CAC in 2015, VULPIS engaged in activity protected by the FMLA, 29 U.S.C. §2611 *et seq.*, triggering the protections of the FMLA, specifically including but not limited to VULPIS' rights pursuant to:  (a) 29 U.S.C. §2612 to take up to twelve (12) workweeks of leave because of the "birth of a son … and in order to take care for such son"; and (b) 29 U.S.C. §2614 to be restored to her position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment upon her return from leave.

39.     CAC was fully aware of its legal obligations to VULPIS as an employer under the FMLA, as evidenced, *inter alia*, by CAC's communications to VULPIS in March 2015 approving VULPIS' FMLA leave request.

40.     At all times material to this action, VULPIS satisfactorily performed her essential job duties as a Market Area Manager for CAC.

41.     Between approximately March 2015 and October 2015, CAC subjected VULPIS to disparate treatment and retaliated against VULPIS as a result of VULPIS having exercised, and/or attempting to exercise, her rights under the FMLA, culminating in the termination of Plaintiff's employment by CAC purportedly for unsatisfactory job performance.

42.     After VULPIS advised CAC of her need to seek maternity and FMLA leave in February 2015, CAC subjected VULPIS to disparate treatment and retaliation including but not limited to: (a) placing VULPIS on "Performance Action Plans"; (b) creating unreasonable, disparate standards to govern Plaintiff's job performance; and (c) terminating VULPIS' employment in October 2015 purportedly for unsatisfactory job performance.

43.     CAC's disparate treatment of and retaliation against VULPIS, including the ultimate termination of VULPIS' employment, were undertaken by Defendant with an intent to retaliate against VULPIS because she exercised and/or attempted to exercise her rights under the FMLA, in violation of 29 U.S.C. §2615(a)(1).

44.     A motivating factor behind CAC's disparate treatment of and retaliation against VULPIS, and Defendant's decision to terminate VULPIS' employment was:  (a) VULPIS requesting time off from work in 2015 for FMLA-qualifying reasons; (b) VULPIS taking leave from her employment with CAC in 2015 due to Plaintiff's pregnancy and birth of her son; (c) Defendant's knowledge that VULPIS sought and/or triggered the protections of the FMLA, including the benefits and protections associated with medical leave and job reinstatement guaranteed by the FMLA; (d) VULPIS' objections  to what she reasonably and in good faith believed was disparate treatment and retaliation by CAC; and (e) VULPIS communications to

Jonathan Blair Witter that CAC was establishing unreasonable, disparate performance standards towards Plaintiff, all in violation of 29 U.S.C. §2615(a)(1).

45.     The reasons proffered by CAC to VULPIS for terminating her employment in October 2015 were false, were known to be false by Defendant at the time of VULPIS' termination and were a pretext for Defendant's violations of VULPIS' rights under the FMLA.

46.     By subjecting VULPIS to disparate treatment, retaliation, and ultimately terminating VULPIS' employment because she exercised and/or attempted to exercise her rights under the FMLA, as guaranteed by, *inter alia*, 29 U.S.C. §§2612(a)(1)(A) and (e), CAC intentionally retaliated against VULPIS.

47.     As a result of CAC's violations of VULPIS' rights protected by the FMLA, VULPIS has suffered and continues to suffer damages including but not necessarily limited to unpaid wages and lost employment benefits.

48.     CAC's violations of the FMLA were willful, intentional and not done in good faith.

49.     Pursuant to 29 U.S.C. §2617(a)(1)(iii), VULPIS is entitled to an award of liquidated damages from CAC equal to the sum of the amount of all wages, employment benefits, and other compensation denied to or lost by VULPIS by reason of Defendant's violations of 29 U.S.C. §2615(a)(1).

50.     Pursuant to 29 U.S.C. §2617(a)(3), VULPIS is entitled to all reasonable attorneys' fees, expert witness fees, and other costs of the action to be paid by CAC.

WHEREFORE, Plaintiff, MERISSA VULPIS, demands judgment against Defendant, CREDIT ACCEPTANCE CORPORATION, for back pay, employment benefits, other compensation including bonuses, compensatory damages, liquidated damages, equitable relief

including but not limited to reinstatement and/or front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

**COUNT III**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. §2000e ET SEQ. - UNLAWFUL SEX/GENDER DISCRIMINATION**

Plaintiff, MERISSA VULPIS, reasserts and reaffirms the allegations of Paragraphs 1 through 26 as if fully set forth herein and further state that this is an action against CREDIT ACCEPTANCE CORPORATION for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

51.     Title VII of the Civil Rights Act of 1964, as amended, provides that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex ..."  42 U.S.C. §2000e-2(a)(1).

52.     At all times relevant to this action, CAC had fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year 2015 within the meaning of 42 U.S.C. §2000e-(b)

53.     Between approximately February 2015 and October 2015, VULPIS was subjected to disparate treatment because of her sex/gender, female, and because of her pregnancy, by, *inter alia*, CAC:  (a) placing VULPIS on a three (3) months "Performance Action Plan" shortly after advising CAC of her pregnancy (b) expecting VULPIS to meet goals and expectations on the "Performance Action Plan" starting April 2015 through June 2015 which included but were not limited to, increased customer enrollments—with monthly averages to be met—and reporting requirements to Witter despite the fact that CAC knew VULPIS would be absent from work on maternity and FMLA leave during the time period during which CAC set requirements VULPIS

was supposed to meet; (c) following VULPIS' conclusion of her maternity leave, Witter again implementing substantially the same "Performance Action Plan" and attempting to hold VULPIS accountable for the Fort Lauderdale territory's performance for the time period VULPIS had been out of work on FMLA leave between April 2015 and June 2015; and (d) terminating VULPIS' employment in October 2015 for the purported reason that VULPIS' was not meeting expectations despite the fact that the targets and averages which CAC claimed VULPIS should have met were not possible to achieve while VULPIS was absent from work on maternity and FMLA leave protected by law, in violation of 42 U.S.C. §2000e-2(a)(1).

54.    CAC's disparate treatment of VULPIS was so severe and pervasive that it altered, the terms, conditions, and privileges of VULPIS' employment with Defendant culminating with her termination in October 2015.

55.     CAC's violations of Title VII of the Civil Rights Act of 1964, as amended, are intentional and were done with malice and reckless disregard for VULPIS' rights as guaranteed under the laws of the United States.

56.    VULPIS suffered and continues to suffer loss of earnings, emotional distress, loss of self-esteem and other injuries as a direct result of CAC's violation of the Civil Rights Act of 1964, as amended.

57.    Pursuant to 42 U.S.C. §2000e-5(k) and 1988(b), VULPIS is entitled to reasonable attorneys' fees if she is the prevailing party in this action.

WHEREFORE, Plaintiff, MERISSA VULPIS, demands judgment against Defendant, CREDIT ACCEPTANCE CORPORATION, for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not

limited to front pay, injunctive relief, interest, attorney's fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

**COUNT IV**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. §2000e *ET SEQ.* – RETALIATION**

Plaintiff, MERISSA VULPIS, reasserts and reaffirms the allegations of Paragraphs 1 through 26 as if fully set forth herein and further state that this is an action against CREDIT ACCEPTANCE CORPORATION for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

58.     Pursuant to 42 U.S.C. §2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees …. because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

59.     CAC intentionally retaliated against VULPIS when VULPIS objected to the March 2015 "Performance Action Plan" because Plaintiff reasonably and in good faith believed she was being subjected to disparate treatment and VULPIS communicated to Witter that CAC was establishing unreasonable, disparate performance standards towards Plaintiff, in violation of 42 U.S.C. §2000e-3(a).

60.     Following VULPIS' return from maternity leave in July 2015, Witter again implemented substantially the same "Performance Action Plan" and attempted to hold VULPIS accountable for the Fort Lauderdale territory's performance for the time period VULPIS was on leave from her employment under the FMLA leave between approximately April 2015 and June

2015, again in retaliation against VULPIS because of her opposition to CAC's unlawful discrimination in violation of 42 U.S.C. §2000e-3(a).

61.     CAC's unlawful retaliation against VULPIS was sufficiently severe and pervasive to alter the terms, conditions and privileges of VULPIS' employment with CREDIT ACCEPTANCE CORPORATION, culminating with Defendant's termination of Plaintiff's employment in October 2015 for the purported reason that VULPIS' job performance was not meeting expectations despite the fact that the targets and averages which CAC claimed VULPIS should have met were not possible to achieve while VULPIS was on maternity and FMLA leave protected by law.

62.     CAC's retaliatory treatment of VULPIS was intentional and done with malice and reckless disregard for VULPIS' rights as guaranteed under the laws of the United States.

63.     VULPIS has suffered and continues to suffer loss of earnings, emotional distress, loss of self-esteem and other injuries as a direct result of CAC's retaliation.

64.     Pursuant to 42 U.S.C. §2000e-5(k) and 1988(b), VULPIS is entitled to reasonable attorneys' fees if she is the prevailing party in this action.

WHEREFORE, Plaintiff, MERISSA VULPIS, demands judgment against Defendant, CREDIT ACCEPTANCE CORPORATION, for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorney's fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT V
## SEX/GENDER AND PREGNANCY DISCRIMINATION
## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

Plaintiff, MERISSA VULPIS, reasserts and reaffirms the allegations set forth in paragraphs 1 through 26 above and further states that this is an action against CREDIT ACCEPTANCE CORPORATION for sex/gender and pregnancy discrimination in violation of F.S. §760.10(1).

65.     The Florida Civil Rights Act provides that it is an unlawful employment practice for an employer "[t]o discharge . . . any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." F.S. §760.10(1)(a).

66.     At all times relevant to this action, VULPIS was an aggrieved person within the meaning of F.S. §760.02(10).

67.     CAC discriminated against VULPIS because of her sex/gender, female, and because of her pregnancy, by, *inter alia*: (a) placing VULPIS on a three (3) months "Performance Action Plan" shortly after advising CAC of her pregnancy (b)  expecting VULPIS to meet goals and expectations on the "Performance Action Plan" starting April 2015 through June 2015 which included but were not limited to, increased customer enrollments—with monthly averages to be met—and reporting requirements to Witter despite the fact that CAC knew VULPIS would be absent from work on maternity and FMLA leave during the time period during which CAC set requirements VULPIS was supposed to meet and (c) following VULPIS conclusion of her maternity leave, Witter again implementing substantially the same "Performance Action Plan" and attempting to hold VULPIS accountable for the Fort Lauderdale territory's performance for the time period VULPIS had been out of work on FMLA leave

between April 2015 and June 2015 and (d) terminating VULPIS' employment in October 2015 for the purported reason that VULPIS' was not meeting expectations despite the fact that the targets and averages which CAC claimed VULPIS should have met were not possible to achieve while VULPIS was absent from work on maternity and FMLA leave protected by law, in violation of F.S. §760.10(1).

68.     The gender-based discrimination suffered by VULPIS was intentional and was undertaken because VULPIS was pregnant.

69.     Defendant's violations of F.S. §760.10(1) were intentional and were done with malice and reckless disregard for VULPIS' rights as guaranteed under the laws of the State of Florida.   As such, VULPIS is entitled to punitive damages against CAC pursuant to F.S. §760.11(5).

70.     VULPIS has suffered and continues to suffer loss of earnings, emotional distress, loss of self-esteem and other injuries as a direct result of Defendant's violations of F.S. §760.10(1).

71.     Pursuant to F.S. §760.11(5), VULPIS is entitled to recover her reasonable attorneys' fees and costs from CAC.

WHEREFORE, Plaintiff, MERISSA VULPIS, demands judgment against Defendant, CREDIT ACCEPTANCE CORPORATION, for back pay, employment benefits, other compensation including bonuses, compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, punitive damages, equitable relief, interest, costs, attorney's fees, expert fees and such other and further relief as this Honorable Court deems proper.

<u>COUNT VI</u>
<u>RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT</u>

Plaintiff, MERISSA VULPIS, reasserts and reaffirms the allegations set forth in paragraphs 1 through 26 above and further states that this is an action against CREDIT ACCEPTANCE CORPORATION for sex/gender and pregnancy discrimination in violation of F.S. §760.10(7).

72.     Pursuant to F.S. §760.10(7), it is "an unlawful employment practice for an employer … to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

73.     CAC intentionally retaliated against VULPIS when VULPIS objected to the March 2015 "Performance Action Plan" because Plaintiff reasonably and in good faith believed she was being subjected to disparate treatment and VULPIS communicated to Witter that CAC was establishing unreasonable, disparate performance standards towards Plaintiff, in violation of F.S. §760.10(7).

74.     Following VULPIS' return from maternity leave in July 2015, Witter again implemented substantially the same "Performance Action Plan" and attempted to hold VULPIS accountable for the Fort Lauderdale territory's performance for the time period VULPIS was on leave from her employment under the FMLA leave between approximately April 2015 and June 2015, again in retaliation against VULPIS because of her opposition to CAC's unlawful discrimination in violation of F.S. §760.10(7).

75.     CAC's unlawful retaliation against VULPIS was sufficiently severe and pervasive to alter the terms, conditions and privileges of VULPIS' employment with CREDIT

ACCEPTANCE CORPORATION, culminating with Defendant's termination of Plaintiff's employment in October 2015 for the purported reason that VULPIS' job performance was not meeting expectations despite the fact that the targets and averages which CAC claimed VULPIS should have met were not possible to achieve while VULPIS was on maternity and FMLA leave protected by law.

76.     CAC's retaliatory treatment of VULPIS was intentional and done with malice and reckless disregard for VULPIS' rights as guaranteed under the laws of the State of Florida.

77.     Defendant's retaliation in violation of F.S. §760.10(7) was intentional and was done with malice and reckless disregard for VULPIS' rights as guaranteed under the laws of the State of Florida.  As such, VULPIS is entitled to punitive damages against CAC pursuant to F.S. §760.11(5).

78.     VULPIS has suffered and continues to suffer loss of earnings, emotional distress, loss of self-esteem and other injuries as a direct result of Defendant's retaliation in violation of F.S. §760.10(7).

79.      Pursuant to F.S. §760.11(5), VULPIS is entitled to recover her reasonable attorneys' fees and costs from CAC.

WHEREFORE, Plaintiff, MERISSA VULPIS, demands judgment against Defendant, CREDIT ACCEPTANCE CORPORATION, for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorney's fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT VII - VIOLATION OF FLORIDA'S WHISTLEBLOWER ACT, F.S. §448.102

Plaintiff, MERISSA VULPIS, reasserts and reaffirms the allegations of Paragraphs 1 through 26 and further states that this is an action against CREDIT ACCEPTANCE CORPORATION for violations of the Florida Whistleblower Act, F.S. §448.102 *et seq.*

80.     At all times material to this Complaint, VULPIS was an employee of CAC within the meaning of F.S. §448.101(2).

81.     At all times material to this Complaint, CAC has been engaged in an industry affecting commerce and have had Ten (10) or more employees for each working day in each of Twenty (20) or more weeks in the current or preceding calendar year.

82.     At all times material to this Complaint, CAC was an employer of VULPIS within the meaning of F.S. §448.101(3), Florida's Whistleblower Act.

83.     Under Florida's Whistleblower Act, F.S. §448.102, an employer **may not** take any **retaliatory personnel action** against an employee because the employee has:

> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

> **(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.**

84.     When VULPIS objected to what she reasonably and in good faith believed was unlawful disparate treatment and retaliation by CAC between March 2015 and October 2015, VULPIS engaged in protected activity within the meaning of Florida's Whistleblower Act, F.S. §448.102(3).

85.     Between March 2015 and October 2015, when VULPIS communicated to Jonathan Blair Witter that CAC was establishing unreasonable, disparate performance standards towards Plaintiff and attempting to hold Plaintiff accountable for the performance of sales measures which did not previously exist and purported expectations and goals including but not limited to, for example, increased customer enrollments—with monthly averages to be met— which were not attainable given VULPIS' maternity and FMLA Leave, VULPIS engaged in protected activity within the meaning of Florida's Whistleblower Act, F.S. §448.102(3).

86.     CAC began subjecting VULPS to "retaliatory personnel action" within the meaning of Florida's Whistleblower Act, F.S. §448.101(5), beginning in or around March 2015 when CAC placed VULPIS on a three (3) month "Performance Action Plan" starting March 2015 through May 31, 2015.

87.     CAC continued subjecting VULPIS to "retaliatory personnel action" within the meaning of Florida's Whistleblower Act, F.S. §448.101(5), between April 2015 and September 2015, by holding VULPIS to unreasonable, disparate performance standards and taking adverse employment action against VULPIS which affected the terms and conditions of her employment with CAC.

88.     Finally, CAC's termination of VULPIS' in October 2015 also constitutes "retaliatory personnel action" within the meaning of Florida's Whistleblower Act, F.S. §448.101(5).

89.     CAC's "retaliatory personnel action" against VULPIS within the meaning of Florida's Whistleblower Act, F.S. §448.101(5), continued from March 2015 up through and culminated in the October 2015 termination of Plaintiff's employment, all in violation of F.S. §448.102(3).

90.     VULPIS reasonably and in good faith believed that CAC's disparate treatment and retaliation against VULPIS between March 2015 and September 2015 were violations of one or more "laws, rules, or regulations" within the meaning of Florida's Whistleblower Act, F.S. §448.101(4).

91.     More specifically, one or more "laws, rules, or regulations" within the meaning of Florida's Whistleblower Act, F.S. §448.101(4) which were applicable to CAC and pertained to CAC's business which Plaintiff reasonably and in good faith belief believed CAC was violating between March 2015 and September 2015 when Plaintiff engaged in protected activity as set forth herein, include but were not necessarily limited to, the FMLA, 29 U.S.C. §2615(a)(1), Title VII of the Civil Rights Act's prohibitions on gender/sex discrimination and retaliation, 42 U.S.C. §2000, and the Florida Civil Rights Act's prohibits on gender/sex discrimination and retaliation, F.S. §§760.10(1) & (7).

92.     The fact that VULPS engaged in activity protected by Florida's Whistleblower Act was a motivating factor in CAC's "retaliatory personnel action" against VULPIS and the termination of VULPIS' employment, in violation of F.S. §448.102(1), (2) & (3).

93.     CAC's violations of F.S. §448.102 were willful, egregious and in direct violation of the statutory protections expressly set forth in Florida's Whistleblower Act.

94.     VULPS has suffered and continues to suffer lost earnings, emotional distress, loss of self-esteem and other injuries as a direct result of CAC's violations of F.S. §448.102.

95.     Pursuant to F.S. §448.104, VULPIS is entitled to recover her reasonable attorneys' fees and costs from CAC.

WHEREFORE, Plaintiff, MERISSA VULPIS, demands judgment against Defendant, CREDIT ACCEPTANCE CORPORATION, for back pay, employment benefits and other compensation including bonuses, compensatory damages, punitive damages, emotional distress, equitable relief, including, but not limited to, reinstatement or front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

MERISSA VULPIS demands trial by jury on all issues so triable.


Dated: June 6, 2016                    Respectfully submitted,


                              By:     **s/KEITH M. STERN**
                                      Keith M. Stern, Esquire
                                      Florida Bar No. 321000
                                      E-mail:  employlaw@keithstern.com
                                      Hazel Solis Rojas, Esquire
                                      Florida Bar No. 91663
                                      E-mail:  hsolis@workingforyou.com
                                      LAW OFFICE OF KEITH M. STERN, P.A.
                                      8333 NW 53rd Street, Suite 450
                                      Doral, FL 33166
                                      Telephone:  (561) 299-3703
                                      Facsimile:  (561) 288-9031
                                      Attorneys for Plaintiff

# EXHIBIT A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA  ☒ EEOC | |

Florida Commission on Human Relations and EEOC

*State or local Agency, if any*

| S.S. No. | 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 |
|---|---|

NAME *(Indicate Mr., Ms., Mrs.)*
**Merissa Vulpis**

HOME TELEPHONE *(Include Area Code)*
(954) 553-1609

STREET ADDRESS
8215 Santa Monica Terrace

CITY, STATE AND ZIP CODE
Tamarac, Florida 33321

DATE OF BIRTH
4/13/1983

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

NAME
**Credit Acceptance Corporation**

NUMBER OF EMPLOYEES, MEMBERS
500+

TELEPHONE *(Include Area Code)*
(248) 353-2700

STREET ADDRESS
25505 W. Twelve Mile Road

CITY, STATE AND ZIP CODE
Southfield, Michigan 48034-8339

COUNTY
Oakland

NAME

TELEPHONE NUMBER *(Include Area Code)*
Received

STREET ADDRESS     CITY, STATE AND ZIP CODE

DEC 03 2015

COUNTY

EEOC Miami District Office

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ AGE |
| ☒ RETALIATION | ☐ NATIONAL ORIGIN | | ☐ DISABILITY | ☐ OTHER *(Specify)* |

DATE DISCRIMINATION TOOK PLACE
EARLIEST *(ADEA/EPA)*     LATEST *(ALL)*
10/7/15

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by Respondent in mid-December 2013 as a Market Area Manager for Respondent's Fort Lauderdale, Florida territory. In February 2015, I notified Respondent that I was pregnant and I applied for maternity leave under the Family and Medical Leave Act (FMLA) beginning in April 2015, which leave request was approved in late February 2015.

After I notified Respondent of my need for maternity leave, on or around March 2, 2015, Jonathan Blair Witter, Respondent's Director of Sales for the Southeast Region, put me on a three (3) month "performance action plan" through May 31, 2015 establishing purported expectations and goals including but not limited to, for example, increased customer enrollments—with monthly averages to be met—and reporting requirements to Mr. Witter despite the fact that Respondent knew I would be absent from work for 3 months on maternity leave. Between approximately April 1, 2015 and June 24, 2015, I took FMLA leave in connection with the birth of my son.

After I returned from maternity-FMLA leave, in July 2015 Respondent gave me substantially the same "performance action plan" terms attempting to hold me accountable for the Fort Lauderdale territory while I had been out on FMLA leave between April '15 and June '15. In early October 2015, Respondent terminated my employment for the purported reason that my job performance was not meeting expectations despite the fact that the targets and averages which Respondent claimed I should have met were not possible to achieve given my absence on maternity-FMLA leave. I believe Respondent subjected me to discrimination and disparate treatment based upon my sex/gender and in retaliation for my pregnancy/maternity-related FMLA leave in violation of Title VII of the Civil Rights Act and the Florida Civil Rights Act.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - *(When necessary for State and Local Requirements)*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the foregoing is true and correct.

*Merissa Vulpis*

Date 12/3/15     Charging Party *(Signature)*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(Day, month, and year)*

# EXHIBIT B

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Merissa Vulpis<br>8215 Santa Monica Terrace<br>Tamarac, FL 33321 | From: | Miami District Office<br>Miami Tower, 100 S E 2nd Street<br>Suite 1500<br>Miami, FL 33131 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 510-2016-01025 | Mercedes Ricardo,<br>Supervisory Investigator | (305) 808-1747 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| ☐ | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☒ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| ☒ | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Nitza Santos Wright*

MAY 1 6 2016

Enclosures(s)

*for* **MICHAEL J. FARRELL,**
**District Director**

*(Date Mailed)*

cc:
Caroline McChristion
Regulatory & Corporate Administrative Supervisor
CREDIT ACCEPTANCE CORPORATION
25505 West Twelve Mile Rd.
Southfield, MI 48034

Keith M. Stern
LAW OFFICE OF KEITH M. STERN, P.A.
8333 NW 53rd Street, Suite 450
Doral, FL 33166

Enclosure with EEOC
Form 161-B (11/09)

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*
